# UNITED STATES DISTRICT COURT
# IN THE WESTERN DISTRICT OF MICHIGAN

PAMELA FLORES,
on Behalf of Herself
and All Others Similarly Situated,

      Plaintiff(s)

v.

                                      Case No.
                                      Hon.
                                      PROPOSED CLASS ACTION

CENTRAL CREDIT SERVICES LLC,

      Defendant(s).

_____/

## CLASS ACTION COMPLAINT

Plaintiff Pamela Flores, by and through her attorney, the Law Offices of Nicholas A. Reyna P.C., alleges the following:

## Nature of Action

1.  Plaintiff brings this action individually and on behalf of all similarly situated persons against Defendant Central Credit Services LLC for violating the Fair Debt Collection Practices Act in attempting to collect a time barred debt without informing the debtor that they cannot be sued on the debt because of the age of the debt. *Buchanan v. Northland Group*, 776 F.3d 393 (6th Cir. 2015); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) ("it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable.") The letter also failed to inform the debtor that any amount of payment or a promise to make a payment would restart the statute of limitations, which also violates the FDCPA.

See *Pierre v. Midland Credit Mgmt*., 2018 U.S. Dist. LEXIS 18860 (N.D. Ill. Feb. 5, 2018).

## Parties

2.  Plaintiff Pamela Flores is a citizen of Michigan residing in Comstock Park, Michigan.

3.  Defendant Central Credit Services LLC ("Central Credit") is a Florida-based Foreign Limited Liability Company whose registered agent is The Corporation Company office is located at 40600 Ann Arbor Rd E (Suite 201) in Plymouth, Michigan 48170. Central Credit Office uses interstate commerce and the mails in a business whose principal purpose is the collection of debt.  Central Credit Office regularly collects or attempts to collect, directly or indirectly, debt owed or due or asserted to be owed or due another.  Central Credit Office is a "debt collector" as the term is defined and used in the FDCPA.  Central Credit Office is a "regulated person" as the term is defined and used in the MCPA.

4.  The Defendant represents a collection agency operating as a "Debt Collector as that term is defined by 15 U.S.C. 1692a(6).

## Jurisdiction and Venue

5.  This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA) and 28 U.S.C. §§ 1331 and 1337.  This Court has supplemental jurisdiction regarding the Plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this jurisdiction is proper because the Defendants transact business here, the pertinent events took place here, and the Plaintiff resides here.

**Factual Background**

6.  On or around May 7, 2018, the Plaintiff first received a collection letter from the Defendant seeking payment in the amount of $247.53 upon a prior outstanding balance owed to Montgomery Wards (*see Exhibit A*).

7.  The subject letter did not otherwise inform the Plaintiff that she could not be sued upon the debt due to the age of the debt

8.  Upon information and belief, the last payment on the account at issue was made more than six years prior to the date of the collection letter.  In addition, pursuant to MCL 600.5831, in actions brought to recover the balance due upon a mutual and open account current, the claim accrues at the time of the last item proved in the account. *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*., 293 Mich App 66; 810 NW2d 277 (2011).  "[T]he passage of time not only dulls the consumer's memory of the circumstances and validity of the debt, but heightens the probability that she will no longer have personal records detailing the status of the debt." *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1079 (7th Cir. 2013) (*quoting Kimber v. Federal Financial Corp*., 668 F. Supp. 1480, 1487 (M.D. Ala. 1987)).

9.  The collection letter forwarded to the Plaintiff predicated upon a "stale claim," and otherwise wholly bereft of any disclosure by the Defendant regarding the fact the debt at issue was in fact time-barred, represented a deceptive and misleading attempt to collect upon an otherwise unenforceable consumer debt, such being done in contravention of the FDCPA.

10. Pursuant to  MCL 600.5807(8), no person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific

performance of any contract unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within 6 years in an action to recover damages or sums due for breach of contract; upon information and belief, no payment was made by the Plaintiff within the relevant six year statute of limitations, and thus for purposes of potential litigation based thereupon, it was effectively "stale."

11. In addition, pursuant to MCL 600.5866, express or implied contracts which have been barred by the running of the period of limitation shall be revived by the acknowledgement or promise of the party to be charged.  But no acknowledgement or promise shall be recognized as effective to bar the running of the period of limitations or revive the claim unless the acknowledgement is made or the promise contained in some writing signed by the party to be charged.  Upon information and belief, the Defendants at no time provided any such written acknowledgement to the Plaintiff.

12. "An unqualified admission that a debt is due and unpaid, accompanied by nothing said or done to rebut the presumption of a promise to pay it, is sufficient to revive the debt against the Statute of Limitations."  *Phillip Ross v. St. Clair Foundry Corporation,* 271 Ill.App.272, 273 (4th Dist. 1933).  It is likewise well-established law in Michigan that repayment on a debt which has expired due to the Statute of Limitations will be revived through payment by the debtor, with any payment by the Plaintiff exposing him to potential liability.

13. More succinctly, previous courts have found that dunning letters such as the one forwarded by the Defendant to the Plaintiff in this instance is deceptive or misleading where (a) they do not tell the consumer that the defendant could not sue on the time-barred debt at issue and (b) did not tell the consumer that if he made, or even just agreed

to make, a partial payment on the debt, he could restart the clock on the long-expired statute of limitations, in effect bringing a long-dead debt back to life.  See *Pantoja v. Portfolio Recovery Assocs., LLC*, 778 F. Supp.3d 743 (N.D. Ill. 2015) ("The debt is revived by operation of law, not at defendant's election").

14. The general rule in Michigan is that partial payment restarts the statute-of-limitations clock, giving the creditor a new opportunity to sue for the full debt.  As a result, paying anything less than the settlement offer exposes a debt to substantial risk." *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 399 (6th Cir. 2015).   A debt is a debt even after the statute of limitations has run such that it cannot be legally enforced.  *Id* at 396-397. The Defendants communication **did not** disclose the debt was time-barred in any way, shape, or form.

15. "A new promise to pay a past-due debt which removes a case from the running of the statute of limitations is unlike a normal bargain in that it creates a new debt" *Axia Incorporated v. I.C. Harbour Construction Co* 150 Ill.App.3d 645, 651-52 (2nd Dist. 1986).

16.  "Requesting a consumer to remit partial payment for an unenforceable debt by giving the consumer the false impression that the debt is legally enforceable" by using the word "settle" violates the FDCPA. *Midland Funding, LLC v. Johnson*, No. 16-348 U.S., Brief of the United States as Amicus Supporting Respondent, p. 15 (citing McMahon, 744 F.3d at 1020).

17. A long line of Supreme Court precedent, cited approvingly in *Spokeo*, supports the conclusion that *Spokeo* did not mean to disturb the Court's prior opinions recognizing that a direct violation of a specific statutory interest recognized by Congress,

standing alone, may constitute a concrete injury without the need to allege any additional harm. See *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" (alteration in original) (quoting Lujan, 504 U.S. at 578)); id. ("'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580 (1992) (Kennedy, J., concurring))); id. ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998); *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989))). But the injury must be "both concrete and particularized." Id. at 1548 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009)).

18. To otherwise confirm, the majority of Courts facing Article III standing challenges in FDCPA cases post-*Spokeo* have determined that a violation of the FDCPA produces a "concrete injury." See *Dittig v. Elevate Recoveries, LLC*, 2016 WL 4447818, at *2 n.1 (W.D. Pa. Aug. 24, 2016) (finding a concrete injury where plaintiff alleged defendant violated the FDCPA by sending him a collection notice containing a "settlement offer" for a time-barred debt); *Irvine v. I.C. Sys., Inc.,* __ F.Supp.3d ___, 2016 WL 4196812, at *3 (D. Colo. July 29, 2016) (holding that plaintiff alleged a concrete injury sufficient to confer Article III standing where the defendant allegedly gave plaintiff false information regarding her debt and also allegedly supplied information to creditors regarding the debt without informing the creditors that the debt

was disputed); *McCamis v. Servis One, Inc*., 2016 WL 4063403, at *2 (M.D. Fla. July 29, 2016) (finding a concrete injury where plaintiff's rights under the FDCPA were allegedly violated when a creditor continued to contact plaintiff in an attempt to collect a debt that was previously discharged in bankruptcy**).** Thus, violation of a plaintiff's rights under the FDCPA has been widely-established as inflicting an "actual," "concrete" harm for Article III standing purposes.

19. The Sixth Circuit more recently held in *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017) that "Spokeo allows for a bare procedural violation to create a concrete harm" in cases alleging "failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent." *Id*. at 859.

20. Assuming arguendo that the language of Defendant's letters constitutes a procedural violation of the FDCPA, Plaintiffs have demonstrated a sufficient "risk of real harm" to the underlying interest to establish concrete injury without the "need [to] allege any additional harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549. The collection notice further required the Plaintiff to seek the advice of legal counsel, given her status as a less sophisticated consumer who in fact assumed the Defendant's collection attempt was legitimate and lawful when it was not, causing her untold and particularized harm, going so far as forcing her to set aside personal  funds required for personal expenses in the event she in fact had to repay the Defendant as they suggested. It caused her a clear information injury by denying her information related to the time-barred status of the debt and/or the fact that making  any payment thereupon would restart the statute of limitations.

21. Indeed, other recent precedent in this Circuit when considering a similar fact

pattern related to the interrelationship of seeking repayment on time-barred debt via this type of collection letter found the Court there agreeing "with Plaintiff that under Sixth Circuit case law, and given the plain language of the Act and its expansive purpose, she has borne her burden of alleging facts that demonstrate standing to bring her claim under the FDCPA."  See Opinion and Order- *Schafer v. Allied Interstate LLC*, 1:17-cv-233 (W.D. Mich 2018).

22. The Fair Debt Collection Practices Act ("FDCPA") is a consumer protection statute that "imposes open-ended prohibitions on false, deceptive, or unfair debt collection practices."  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587. 130 S.Ct. 1605, 1615 (2010).

23. The Fair Debt Collection Practices Act states that it is unlawful for a debt collector to use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  15 U.S.C. § 1692e.

24. The FDCPA states that it is unlawful for a debt collector to make a false representation of the character, amount, or legal status of any debt.  15 U.S.C. §1692e(2)(A).

25. The FDCPA states that it is unlawful for a debt collector to take any action which it cannot legally take in connection with a particular debt.  15 U.S.C. § 1692e(5).

26. The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

27. The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. §

8

1692e(10).

28. The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt, including the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

29.    The Defendant violated the FDCPA, 15 U.S.C. §§ 1692e and 1692e(2)(A), (8), and (10), and 1692f(1).   See, e.g., *Watkins v. Peterson Enterprises, Inc*., 57 F.Supp.2d 1102 (E.D. Wash. 1999).

30. The FDCPA is a strict liability statute and thus proof of <u>one</u> violation thereof is sufficient to support a finding of summary judgment in favor of a Plaintiff.  *Cacace v Lucas,* 775 F. Supp. 502, 505 (D. Conn. 1991).  Moreover, a plaintiff in such instances does not need to prove knowledge or intent.  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011).  The Plaintiff also does not have to have suffered actual damages.  *Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 437 (6th Cir. 2008).

31. The described acts and omissions of the Defendant were done in connection with efforts to collect an alleged debt from the Plaintiff, such having been done intentionally and willfully.

32. The Defendant intentionally and willfully violated the FDCPA

33. As a direct and proximate result of the Defendant's negligence, the Plaintiff suffered a substantial and unjustifiable financial loss.

34. As a further direct and proximate result of the Defendant's negligence, the

Plaintiff has sustained consequential damages, including attorney fees and legal expenses.

## Conclusions of Law

35.  The collection actions taken against the Plaintiff by the Defendant violated numerous provisions of the FDCPA.

36. The detailed conduct by the Defendant in attempting to collect a debt was barred by the applicable statute of limitations given the debt's "stale" nature, and these actions were as a result violations of both the FDCPA and MCPA.

37. This Circuit has previously held that the omission of the bona-fide error defense in this state but otherwise available as an affirmative defense in other jurisdictions, thereby allowing debt collectors to show that their violation was unintentional, signifies Michigan's specific intent to avoid absolving debt collectors of liability, even for unintentional mistakes.  *Gamby v. Equifax Information Services, LLC*, 2010 U.S. Dist. Lexis 1157, 1165 (E.D. Mich. Jan. 7, 2010).

## COUNT I- VIOLATION OF 15 U.S.C. 1692

38. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

39. The foregoing acts and omissions of the Defendant and their agents constituted numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq*., with respect to the Plaintiff.

40. The Defendant violated 15 U.S.C. § 1692e by using a false, deceptive, or misleading representation or means in first forwarding a collection letter to the Plaintiff

indicating a "stale" debt nevertheless remained due and owing to it and thereafter forwarding a collection letter centered upon the stale debt which it possessed no legal standing to file from the outset.  More specifically, the subject letter while making a settlement offer failed to otherwise disclose that the Plaintiff could not be sued on the subject debt due its age and therefore violated the FDCPA.  *Buchanan* at 393.

41. The Defendant further violated 15 U.S.C. § 1692e by using a false, deceptive, or misleading representation or means by forwarding a collection letter to the Plaintiff pursuant to a "stale" debt whose collection was barred by the applicable statute of limitations, and by previously misrepresenting the exact amount owed by the Plaintiff by way of the Defendants' collection letter since the Plaintiff in fact owed nothing.

42. The Defendant violated 15 U.S.C. § 1692e(2)(A) by using a false representation of the amount of the debt for the foregoing reasons.

43. The Defendant violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect the debt at issue for the foregoing reasons.

44. Each violation of the MCPA by the Defendant as outlined in this Complaint is likewise a violation of 15 U.S.C. § 1692f as an "unfair or unconscionable means to attempt to collect a debt."

45. Each violation of the MOC by the Defendant as outlined in this Complaint is likewise a violation of 15 U.S.C. § 1692f as an "unfair or unconscionable means to attempt to collect a debt."

46. The United States Supreme Court has affirmed that "to collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings."  *Heintz v. Jenkins*, 514 U.S. 291, 294; 115 S.Ct. 1489 (1995).  In this

instance, the Defendant forwarded a collection letter to the Plaintiff based upon on a clearly-established stale debt through utilizing methods that fell clearly in line with the above-referenced definition of debt collection.

47. This jurisdiction is reliant upon the "least sophisticated debtor" standard to determine whether a communication might effectively deceive an unsophisticated consumer under 15 U.S.C. 1692.  *Smith v Computer Credit*, 167 F.3d 1052 (6th Cir. 1999).  More specifically, "the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  *Federal Trade Commission v Standard Education Society*, 302 U.S. 112, 116, 50 S.Ct. 113, 115, 82 L.Ed. 141 (1937).  It seems sensible to suggest that attempts such as those by the Defendant in this case to collect upon a stale debt which the Plaintiff was not legally required to repay by sending the Plaintiff collection notices indicating a current balance would certainly possess the potential to confuse less sophisticated Debtors such as the Plaintiff in this instance, which it in fact did.

48. Contact between a debt collector and a debtor violates the FDCPA if it explicitly or implicitly represents that the debt collector can sue on a debt when it cannot do so.  *Kimber v Federal Fin. Corp*., 668 F. Supp. 1480, 1489 (M.D. Ala. 1987).  Federal and district courts have uniformly held that a debt collector's threatening to sue on a time-barred debt and/or filing a time-barred suit in state court to recover that debt violates §§1692e and 1692f.  *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013).

49. Courts in similarly-styled cases have specifically reasoned that the FDCPA

12

outlaws "state suits to collect consumer debts" as unfair because (1) few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts and would therefore unwittingly acquiesce to such lawsuits; (2) the passage of time…dulls the consumer's memory of the circumstances and validity of the debt; and (3) the delay in suing after the limitations period heightens the probability that the debtor will no longer have personal records about the debt. *Phillips*, 736 F.3d at 1079.

50. Courts in other similarly-styled cases have likewise held that such limitations periods represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time because "the right to be free of stale claims…comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356-57 (1979).

51. For a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Grden v Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). ).  It is additionally important to note that an "explicit demand for payment" is not always necessary for the statute to apply. *Gburek v. Litton Loan Serv. LP,614 F.3d 380* , 385 (7th Cir.2010). Obviously, the collection letter forwarded to the Plaintiff by the Defendant possessed one singular, animating purpose- to induce payment by the Plaintiff.

52. Generally, the FDCPA permits recovery of actual damages for emotional distress.  More specifically, pursuant to 15 U.S.C. § 169k(a)(1), "any debt collector who fails to comply with the FDCPA with respect to any person is liable to such a person in an amount equal to the sum of…any actual damages sustained by such person as a result

of such failure."  Commentary to the FDCPA goes on to state that such actual damages

for FDCPA violations include "damages for personal humiliation, embarrassment, mental

anguish, or emotional distress," as well as "out-of-pocket" expenses."  Staff Commentary

on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13 1988).

See also *Beeker v. Montgomery, Lynch*, 2003 WL 23335929 at 2 (N.D. Ohio) (FDCPA

permits recovery of actual damages for emotional distress).

     53. Districts within the Sixth Circuit including the Northern District of Ohio have

concluded that the FDCPA does not require a plaintiff to satisfy the state law elements of

intentional or negligent infliction of emotional distress to recover actual damages for such

under 15 U.S.C. § 1692k(a). *Id* at 2.  See also *Minick v. First Federal Credit Control, Inc*.

1981 U.S. Dist. LEXIS 18622, at 3-4 (N.D. Ohio).  "Actual damages for emotional

distress can be proved independently of state law requirements" for intentional or

negligent infliction of emotional distress. *Smith v. Law Offices of Mitchell N. Kay*, 124

B.R. 182, 188 (D. Del. 1991).  In addition, courts have previously concluded that a party

may prove actual damages for emotional distress purely through his or her own

testimony.  *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004).

     54. Moreover, under the FRCA, actual damages may include economic damages

and damages for "humiliation and mental distress."  *Bryant v. TRW, Inc.,* 487 F. Supp.

1234, 1239-40 (E.D. Mich. 1980).  The court in that instance instructed the jury to

consider mental anguish, embarrassment, and humiliation in determining the proper

measure of actual damages to award the victim of a FRCA violation.  *Id* at 1239.  Such is

particularly important given that the damages standard under the FRCA has been looked

to when determining the appropriate standard under the FDCPA.  *Smith* at 187.

55. The sustained efforts to collect an amount from the Plaintiff which she was not required to repay caused her humiliation and distress.

56. As an actual and proximate result of the acts and omissions of the Defendant, the Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, anxiety, for which the Plaintiff should be compensated in an amount to be established by jury and at trial.

57. As a result of the Defendant's violations of the FDCPA, the Plaintiff is specifically entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Plaintiff.

## COUNT II- VIOLATION OF THE MICHIGAN OCCUPATIONAL CODE

58.  Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

59. The Defendant represents a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

60. The Plaintiff is a debtor as that term is defined in M.C.L. § 339.901(f).

61. The Defendant's foregoing acts in attempting to collect the alleged debt at issue violated MCL § 339.915e, which prohibits a Licensee from "making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt."

62. The Defendant's foregoing acts in attempting to collect this alleged debt

violated MCL 339.915f, which prohibits a Licensee from "misrepresenting in a communication with a debtor any of the following: (i) the legal status of a legal action being taken or threatened and/or (ii) the legal rights of the creditor or debtor."

63. The Defendant violated M.C.L. 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

64. The Defendant's violations of the Michigan Occupational Code were willful given the clear and unmistakable knowledge they had of the status of the debt.

65. As an actual and proximate result of the acts and omissions of the Defendant, the Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, anxiety, loss of sleep and suffering, not to mention causing counsel for Plaintiff-Debtor unnecessary additional work by having to deal with the situation, for which the Plaintiff should be compensated in an amount to be established by jury and at trial.

66. More specifically, due to the Defendant's willful violations of the MOC, the Plaintiff is entitled to actual damages above $50.00 pursuant to M.C.L. § 339.916; statutory damages in an amount up to $150.00 pursuant to M.C.L. § 339.916; and reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916.

## COUNT III- VIOLATION OF THE MICHIGAN COLLECTION PRACTICES ACT

67. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

68. The Defendant represents a "Regulated Person" as that term is defined in the

Michigan Collection Practices Act ("MCPA"), at MCL § 445.251.

69. Plaintiff is a "Consumer" as that term is defined at MCL § 445.251.

70. Generally speaking, "the Michigan Collection Practices Act prohibits abusive collection efforts…with respect to obligations arising out of a 'purchase made primarily for personal, family, or household purposes." *Levant v. Am. Honda. Fin. Corp*., 356 F. Supp. 2d 776, 782 (E.D. Mich. 2005).

71. The Defendant's foregoing acts in attempting to collect this alleged debt violated MCL 445.252e, which prohibits a Regulated Person from "making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt."  The Defendant initiated collection specific to debt owed by the Plaintiff which it had not standing to pursue given the "stale" nature of the debt.

72. The Defendant's foregoing acts in attempting to collect this alleged debt violated MCL §445.252f, which prohibits a Regulated Person from  "misrepresenting in a communication with a debt any of the following:  (i) the legal status of a legal action being taken or threatened and/or (ii) the legal rights of the creditor or debtor."

73. The Defendant, specifically by way of the communications between its' agents and representatives and the Plaintiff, clearly misrepresented to the Plaintiff her legal rights.

74. Plaintiff has suffered damages as a result of these violations of the Michigan Collection Practices Act.

75. These violations of the MCPA were willful given the clear and unequivocal

prior notice of the legal status of the debt at issue.

76. These violations of the MCPA were willful, and as a result the Plaintiff is entitled to actual damages above $50.00 pursuant to M.C.L. § 445.257; statutory damages in an amount up to $150.00 pursuant to M.C.L. § 445.257; and reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257.

## COUNT IV- CLASS ACTION ALLEGATIONS

77. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

78. The Plaintiff bring this action on behalf of themselves and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

79. The Plaintiff seeks to certify a single class as set forth below.

80. The Plaintiff proposes a class comprised of persons with FCRA claims against the Defendant and is defined to include (a) each and every natural person in Michigan who were sent a collection letter in the form of "Exhibit A" attached to this Complaint within one year prior to the initiation of this lawsuit where the letter was not returned and the debt sought to be collected was in default for more than six years and no payment had been received for more than six years.

81. The identities of all class members are readily ascertainable from the business records of the Defendant; upon information and belief, the class consists of more than 1,000 persons.

82. Excluded from the Plaintiff Class is the Defendant and all officers, members, partners, managers, directors, and employees of the Defendant and each of their

respective immediate families, and legal counsel for all parties to this action and all members of their respective immediate families.

83. The Plaintiffs' claims are typical of the class members, as all claims are based upon the same facts and legal theories. Plaintiffs' claims and the claims of all class members are based on the same factual and legal theories. Moreover, Plaintiffs and all class members have suffered the same or similar injury, loss, and damage, all caused by Defendants' false, deceptive, misleading, inaccurate and untrue misrepresentations.

84. The Plaintiffs will fairly and adequately protect the interests of the Plaintiff Classes defined in this complaint. Plaintiffs have retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them to not vigorously pursue this action.

85. This action has been brought, and may be properly maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

      (a)      **Numerosity**- The Plaintiff is informed and believes and on that basis alleges that the Plaintiff Class defined above is so numerous that joinder of all members would be impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

      (b)      **Common Questions Predominate**- Common questions of law and

fact exist as to all members of the Plaintiff Classes and those

questions predominate over any questions or issues involving

only individual class members, including (i) whether the

Defendant provided a collection letter seeking repayment on time-

barred debt and (b) whether the Defendant's conduct constituted

violation(s) of the FDCPA

(c)        **Typicality**- The Plaintiffs' claims are typical of the claims of the

class members.  Plaintiffs and all members of the Plaintiff Classes

have claims arising out of the Defendant's common uniform

course of conduct complained of herein.

(d)        **Adequacy**- The Plaintiffs will fairly and adequately protect the

interests of the class members insofar as Plaintiffs have no interest

that will prove adverse to the absent  class members.  The

Plaintiffs are committed to vigorously litigating this matter.

Plaintiffs has also retained counsel experienced in handling

consumer lawsuits, complex legal issues, and class actions.

Neither the Plaintiffs nor her counsel has any interest which

might cause them to not vigorously pursue the instant class action

lawsuit.

(e)        **Superiority**- A class action is superior to the other available means

for the fair and efficient adjudication of this controversy

because individual joinder of all members would be

impracticable.  Class action treatment will permit a large number

of similarly situated persons to prosecute their common claims in a
single forum   efficiently and without unnecessary duplication of
effort and expense that individual actions would engender.

86. Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil
Procedure is appropriate because adjudications with respect to individual members create
a risk of inconsistent or varying adjudications which could establish incompatible
standards of conduct for the Defendant, who collects debt throughout the United States of
America.

87. Certification of a class(es) under Rule 23(b)(2) of the Federal Rules of Civil
Procedure is appropriate because the Defendant has acted on grounds generally
applicable to the Class, making appropriate equitable injunctive relief with respect to the
Plaintiffs and Class as a whole.

88. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil
Procedure is also appropriate in that the questions of law and fact common to members of
the Plaintiff Class predominate over any questions affecting an individual member, and a
class action is superior to other available methods for the fair and efficient adjudication of
the controversy.

89. Depending upon the outcome of further investigation and discovery, the
Plaintiffs may, at the time of class certification motion, seek to modify the class
definition and/or certify a class only as to particular issues pursuant to Fed.R.Civ.P.
23(c)(4).

## **CONCLUSION**

## **COUNT I:  VIOLATIONS 15. U.S.C § 1692**

**WHEREFORE**, based upon the foregoing facts, the Plaintiff respectfully requests the following relief:

(A)    Actual damages for Plaintiff pursuant to 15 U.S.C. §1692k(a)(1);

(B)    Statutory damages for Plaintiff pursuant to 15 U.S.C. §1692k;

(C)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3);

(D)    Such further relief as the court deems just and proper.

**COUNT II & III- VIOLATION OF MICHIGAN OCCUPATIONAL CODE AND MICHIGAN COLLECTION PRACTICES ACT**

**WHEREFORE,** based upon the foregoing facts, the Plaintiff respectfully requests the following relief:

(A)    Actual damages pursuant to M.C.L. 339.916(2);

(B)    Treble the actual damages pursuant to M.C.L. 339.916(2);

(C)    Statutory damages pursuant to M.C.L. 339.916(2); and

(D)    Reasonable attorney's fees and court costs pursuant to M.C.L. 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Respectfully submitted,

Dated: August 2, 2018                     /s/ Nicholas Reyna
                                          By: Nicholas Reyna (P68328)
                                          Attorney for Plaintiff
                                          528 Bridge St., Ste 1A
                                          Grand Rapids, MI 49504
                                          616-235-444